# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**ANTONIO PERRY,**

                **Plaintiff,**

**-vs-**                                         **Case No. 6:05-cv-1753-Orl-DAB**

**COMMISSIONER OF SOCIAL SECURITY,**

                **Defendant.**

_____

## MEMORANDUM OPINION AND ORDER

This cause came on for consideration without oral argument on review of the Commissioner's denial of Plaintiff's application for Social Security disability insurance benefits. For the reasons set forth herein, the decision of the Commissioner is **AFFIRMED.**

### *PROCEDURAL BACKGROUND*

Plaintiff protectively filed an application for Social Security Disability Insurance benefits on March 27, 2003, claiming an onset date of December 2, 2000 (R. 44-46). The application was denied initially, and upon reconsideration (R. 26-32). Thereafter, Plaintiff requested and received an administrative hearing before an Administrative Law Judge (hereinafter "the ALJ") (R. 289-320). The ALJ issued an unfavorable decision on July 27, 2005 (R. 8-17). Plaintiff filed a Request for Review of a Hearing Decision with the Appeals Council (R. 256) and submitted additional evidence and argument. The Appeals Council denied the request for review (R. 4-7), making the ALJ's decision the final decision of the Commissioner. This action followed and the case is now ripe for review under the regulations of the Social Security Act, 42 U.S.C. § 405(g).

### *NATURE OF CLAIMED DISABILITY*

*Summary Of Evidence Before the ALJ*

Plaintiff was 46 years old at the time of the ALJ's decision, with a high school education, two years of technical training, and past relevant work as a service technician, nurse's aide, fire alarm service technician, dishwasher/cook, and software support technician (R. 44, 51, 65-72). Plaintiff alleges disability beginning December 2, 2000, due to chronic low back pain, chronic left-side neck and shoulder pain, glaucoma, and depression (R. 50). The ALJ found that Plaintiff was insured for disability benefits only through June 30, 2002 (R. 12). Thus, at issue below was whether the evidence established disability on or prior to that date.

The medical evidence before the ALJ is set forth in the administrative decision. By way of summary, prior to the alleged onset date, Plaintiff was involved in a series of accidents that injured his neck and lower back (R. 145). Plaintiff presented to Dr. Alan Appley on September 21, 1999, and was assessed with L4-5 disc disease and disc herniation with left L5 radiculopathy that had been unresponsive to conservative treatment (R. 145-146). MRI results of October 19, 1999 confirmed that Plaintiff had a diffuse bulge at L4-5 eccentric to the left with L5 nerve root impingement (R. 143). Plaintiff was symptomatic with left buttock and leg pain, and there was decreased sensation to pinprick in the left L5 distribution with positive straight leg raising, so surgery was recommended.

Plaintiff underwent a L4-5 microdiskectomy in December 1999 but only had transient relief of his pain (R. 142). On February 29, 2000, MRI evidence of a disc recurrence led Dr. Appley to recommend repeat surgery (R. 141). In the interim, a course of epidural steroids were administered offering no relief (R. 140), and another MRI was performed revealed a focal mass effect on the thecal sac on the left at L4-5 (R.139). On August 28, 2000 *and* August 30, 2000, Plaintiff underwent two

left L4-5 reexploration and microdiskectomy surgeries (R. 137-38, 128). On September 1, 2000, he was discharged, with improvement in his leg pain and a good prognosis (R. 137). Activity was "as tolerated." *Id.*

Two weeks after the surgeries, Plaintiff reported that "some of his symptoms had improved significantly while he still has a constant pain in the leg." (R. 128). Additionally, Dr. Appley noted that there was a decreased sensation to pinprick in the L5 distribution and positive straight leg raising. Treatment notes of October 5, 2000, suggest that Plaintiff was "improving somewhat" (R. 127) and, on return visit December 28, 2000, Dr. Appley indicated that Plaintiff was "doing reasonably well" and felt that he had reached maximum medical improvement from a neurological standpoint (R. 126). Dr. Appley opined that Plaintiff had a 9% permanent impairment based on two lumbar disc operations with residual symptoms, with an additional 1% each for sensory and motor impairment (total 11%). *Id.* Dr. Appley opined as follows:

> The patient's ability to sit, stand or walk for extended periods of time without interruption are very limited. He functions fairly well as long as he has unlimited ability to move around. His lifting should be frequently up to ten pounds and occasionally up to twenty pounds. He can carry up to ten pounds occasionally and that is all. He can bend occasionally and reach above shoulder level frequently. He can use his hands for repetitive action, simply grasping, pushing and pulling with fine manipulation. He cannot use his feet for repetitive movements.

(R. 126).

Plaintiff returned to Dr. Appley on March 8, 2001, following a car accident (R. 125). Plaintiff complained of pain in his right hip and leg, as well as his neck and left arm. Examination was "somewhat pain modified but shows really no new significant motor, sensory or reflex deficit." *Id.* MRI of the cervical spine dated March 22, 2001, revealed an anterior dural sac compression by posterior disc space spur, but impression was no focal disk herniation, nerve root or cord compression

(R. 124). X-rays showed no significant abnormalities (R. 123). Dr. Appley interpreted these tests as showing minimal degenerative disease without disc herniation or cord or nerve root compression (R. 122).

The ALJ noted that the remainder of the medical evidence in the record was after the date last insured (R. 13) and was apparently therefore not considered.[1]

Plaintiff appeared and testified at his hearing, with respect to his complaints of pain and limitations. Plaintiff stated that at the time in question, he had difficulty moving his neck, lifting things with his left arm, grasping things with his hand and walking (R. 310). He felt he could sit for 30 minutes maximum, stand for 20 minutes and walk around for two blocks (R. 311). He felt he could lift and carry 20 pounds. *Id.* He could drive for about 20 minutes at a time (R. 311), accompanied his wife shopping "maybe once a month" (R. 312), and would read and do exercises "to limber myself up" (R. 312). Plaintiff testified that he was involved in an accident in January 2003, which increased his pain and discomfort and drastically affected his vision (R. 314-5). Prior to the 2003 accident, Plaintiff had enrolled at community college where he was trying to update his computer skills. *Id.*

The record also includes activities of daily living questionnaires completed by Plaintiff and by his wife. Plaintiff's wife noted that Plaintiff prepares his own meals (cooks dinner 2-3 times a week), does laundry and cleaning the kitchen, and goes out with friends and relatives (R. 61-2). She noted that he only does what he can complete, as the medication he takes affects his stamina. *Id.* Plaintiff confirmed that he prepares his own meals, does home repair when capable and maintains their automobiles (R. 76-77).

---

[1] There is medical evidence from Plaintiff's eye doctor which is prior to the date last insured. These records indicate that Plaintiff had a peripheral retinal hole treated with a laser in February 2002 (R. 110). Visual acuity was 20/40 +1 OD and 20/40 OS. Response to the treatment was noted to be "good" and there is no mention of complications or limitations.

Two non-examining state agency psychologists opined that prior to the date last insured there was insufficient evidence to support the existence of a severe mental impairment (R. 158-71; 241-254). The record also includes two non-examining state agency assessments of Plaintiff's residual functional capacity, based on a review of the medical records. The state agency physicians opined that Plaintiff could lift 20 pounds occasionally and 10 pounds frequently; could stand, and/or walk for six hours, with normal breaks, and sit for six hours (R. 101-108; 172-79).

Based on the foregoing, the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease of the lumbar spine status post surgery, and left L4-5 facet syndrome (Tr. 16). The ALJ found no evidence that Plaintiff had a severe impairment of depression. The ALJ concluded that Plaintiff could perform light work activity, with no more than occasional balancing, stooping, and crouching, and no exposure to extreme cold and heat (R. 15-16). He then found that Plaintiff could return to his past relevant work as a cook and technical support representative as those jobs are generally performed in the national economy and with reference to technical support representative, as he previously performed (R.15-16). The ALJ therefore found that Plaintiff was not disabled pursuant to 20 C.F.R. §404.1520(g) (R. 15-16).

Following the adverse determination, Plaintiff's attorney submitted to the Appeals Council evidence dated May 2001 through April 2002 from Orlando Pain Institute (R. 7). This evidence, which was not presented to the ALJ, indicated that Plaintiff had begun treatment with Dr. Alexander Jungreis on May 21, 2001 (R. 268-270). Dr. Jungreis diagnosed Plaintiff with lumbar radiculopathy, and Plaintiff underwent facet injections of the L4-5 region on the left side (R. 270). On June 18, 2001, Dr. Jungreis noted that Mr. Perry continued to have lower back pain and left knee pain, and physical therapy three times a week was prescribed, along with pain medication (R. 273). At the

following visit, Plaintiff indicated that the physical therapy aggravated his lower back pain, but did help in his range of motion (R. 274). On August 29, 2001 examination, Plaintiff's cranial nerves, motor and deep tendon reflexes were intact, and range of motion of the lumbar spine was stiff and diminished (R. 276). Thereafter, Dr. Jungreis indicated that Plaintiff had persistent diminished range of motion of the cervical spine in all quadrants, spasms, and point tenderness (R. 277). In a letter dated October 3, 2001, Dr. Jungreis noted that Plaintiff had the "employment restrictions of limited standing, sitting and lifting." (R. 278).

In an effort to explain Plaintiff's complaints of left arm pain, Plaintiff underwent an electro diagnostic study on October 16, 2001 (R. 279). The study was normal, with "no evidence of carpal tunnel syndrome, ulnar neuropathy or a cervical radiculopathy to explain the patient's current pain." (R. 280). On October 26, 2001, Plaintiff reported that he was making gains and was looking for a job (R. 283). Physical examination was consistent with myofascial pain with multiple trigger points. *Id.*

Thereafter, Plaintiff presented for Botox injections on November 7, 2001 (R. 284), which gave him a month of relief. A second injection followed on January 25, 2002 (R. 285). Examination of his knee that date revealed tenderness to palpitation, but good strength and reflexes, no atrophy and Plaintiff had a normal gait (R. 286). Plaintiff returned for another Botox injection in February 2002 (R. 287). On return visit on April 15, 2002, Plaintiff had tightness over the left trapezius muscle, but no atrophy and deep tendon reflexes and strength were good in all extremities (R. 288). Physical therapy for cervical and lumbar strengthening was ordered, as well as medication.

The Appeals Council declined review.

## *STANDARD OF REVIEW*

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). Substantial evidence is more than a scintilla, and it must do more than create a suspicion of the existence of the fact to be established; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Walden v. Schweiker*, 672 F.2d 835, 838-839 (11th Cir. 1982).

The Court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Walker v. Bowen*, 826 F.2d 996, 1000 (11th Cir. 1987). Even if the Court finds that the evidence weighs against the decision, the Court must affirm if the decision is supported by substantial evidence. *See Harwell v. Heckler*, 735 F.2d 1292 (11th Cir. 1984); *Martin v. Sullivan*, 894 F.2d at 1520 (11th Cir. 1990). The Court may not reweigh the evidence or substitute its own judgment, even if the Court finds that the weight of the evidence is against the decision. *Martin*, 894 F.2d at 1529. While there is a presumption in favor of the findings of fact, no such presumption attaches to the ALJ's legal conclusions about the proper standards to be applied in evaluating claims. *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986); *Welch v. Bowen*, 854 F.2d 436, 438 (11th Cir. 1988).

### *ISSUES AND ANALYSIS*

The ALJ must follow five steps in evaluating a claim of disability. *See* 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, he or she is not disabled. 29 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit his or her physical or mental ability to do basic work activities, then he or she does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c).

Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he or she is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent him or her from doing past relevant work, he or she is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering residual functional capacity, age, education, and past work) prevent him or her from doing other work that exists in the national economy, then he or she is disabled. 20 C.F.R. § 404.1520(f). Here, the ALJ determined this case at step four, finding that Plaintiff could return to his past relevant work of technical support representative as he performed it and as it is performed in the national economy, and also could return to his past relevant work of cook as it is performed in the national economy.

Plaintiff asserts error, contending that 1) the ALJ erred in determining that Plaintiff has the residual functional capacity (herein "RFC") to perform light work, "when the treating physician indicated that the claimant would be unable to perform sedentary work, and no other examining physician indicated that the claimant had the residual functional capacity as determined by the Commissioner" (Brief at 8-9); 2) that the ALJ erred in evaluating Plaintiff's pain; and 3) erred in evaluating Plaintiff's credibility. Plaintiff's brief also contends that the Appeal's Council's denial of review of the decision was not supported by substantial evidence. For the reasons set forth below, the Court finds no error and **affirms** the administrative decision.

**The state of the record**

Before addressing whether the ALJ's decision was supported by substantial evidence and made in accordance with proper legal standards, the Court must first address the state of the record and Plaintiff's objection to the ALJ not considering the evidence submitted to the Appeals Council. As noted above, Plaintiff's insured status expired on June 30, 2002. The ALJ considered the medical

-8-

records before him that were relevant to the time period at issue, but did not consider medical records that were post date last insured. Additionally, Plaintiff presented medical records to the Appeals Council that were also relevant to the time period at issue, but were not presented to the ALJ and were therefore not considered by the ALJ. Plaintiff asserts that this was error. The Court disagrees.

Plaintiff asserts that this Court has authority to review the Appeals Council's decision to deny review. This is not entirely true. This Court has authority to review the "final decision" of the Commissioner. 42 U.S.C. § 405(g); *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994). When the Appeals Council denies review, the decision of the ALJ becomes the final decision. 20 C.F.R. § 404.955. Thus, in most instances, when the Appeals Council has denied review, "we will look only to the evidence actually presented to the ALJ in determining whether the ALJ's decision is supported by substantial evidence." *Falge v. Apfel,* 150 F. 3d 1320, 1323 (11th Cir. 1998).

This general rule is not without exception. Sentence six of 42 U.S.C. § 405(g) permits a court to remand the case for consideration of newly discovered evidence:

> The court . . . may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . .

42 U.S.C. § 405(g). To remand under sentence six, the claimant must establish: 1) that there is new, non-cumulative evidence; 2) that the evidence is material – relevant and probative so that there is a reasonable possibility that it would change the administrative result; and 3) there is good cause for failure to submit the evidence at the administrative level. *See Cannon v. Bowen*, 858 F.2d 1541, 1546

(11th Cir. 1988); *Keeton v. Dep't of Health and Human Services*, 21 F.3d 1064, 1067 (11th Cir. 1994).

Moreover, as noted in *Falge*:

> When the Appeals Council refuses to consider new evidence submitted to it and denies review, that decision [the denial of review] is ⋯ subject to judicial review because it amounts to an error of law." *Keeton*, 21 F.3d at 1066. To review the AC's denial of review, courts will have to look at the pertinent evidence to determine if the evidence is new and material, the kind of evidence the AC must consider in making its decision whether to review an ALJ's decision. See 20 C.F.R. § 404.970(b) ("Appeals Council shall evaluate the entire record including the new and material evidence submitted to it if it relates to the period on or before the date of the administrative law judge hearing decision.") (emphasis added); 20 C.F.R. § 416.1470(b) (same).

150 F. 3d at 1324.

Thus, the Court reviews the decision of the Appeals Council, within the limited scope set forth above, and finds no error. The evidence presented to the Appeals Council was not "new." Indeed, the evidence consisted of medical records dated May 21, 2001 to April 15, 2002, well before the date of the ALJ's decision and years prior to the hearing. No explanation was offered as to why these records, which are material to the extent they relate to the appropriate time period at issue, were not tendered to the ALJ. Indeed, at hearing, the ALJ addressed Plaintiff's attorney as follows:

> ALJ: Counselor, we have a modular disability folder with the following proposed exhibits: 1 and 2A, 1 through 8B, 1 and 2D, 1 through 11E, and 1 through 14F. Do you have any objection to their receipt into evidence?
>
> ATTY: No objections, your honor.
>
> * * *
>
> ALJ: Do you have or do you know of any additional written material that's not in the record that I should hold the record open to receive subsequent to the hearing?
>
> ATTY: No, your honor. I believe the record is complete.

(R. 293). [2] No good cause is shown for failing to include the records initially.

Not only are the records not "new," they are not reasonably probative; that is, there is no showing that these records were likely to change the administrative result. Plaintiff cites to the ALJ's determination that Plaintiff was likely not in any severe distress prior to his date last insured, because he only returned to Dr. Appley once following being placed at maximum medical improvement, and "there was no further treatment for any back or neck condition until July 2002, almost 1.5 years after his last visit with Dr. Appley." (R. 14). While Plaintiff correctly notes that this particular observation would likely not have been made, the standard is whether the new evidence would have changed the administrative result. Here, as summarized above, while Plaintiff certainly continued to treat with physical therapy, injections and medications, nothing in these treatment records is overtly inconsistent with the administrative result reached here. Plaintiff was "making gains," "looking for a job," and the restrictions placed by Dr. Jungreis (limited standing, sitting and lifting) mirror those placed by Dr. Appley and acknowledged by the ALJ, as further examined below.

As the evidence before the ALJ was not new, nor reasonably probative, and good cause was not evident for failing to include the records initially, remand is not appropriate. Thus, the Court proceeds to review the merits of the ALJ's decision, based only on the evidence before him. *Fagle.*

**Treating Physicians**

Substantial weight must be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise. *See Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997); *Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir. 1991); 20 C.F.R. § 404.1527(d).

---

[2] In brief to the Appeals Council, Plaintiff's attorney inexplicably noted that the records were "new" and "not available at the time of hearing." In view of the date of the records and that they are records of Plaintiff's treating physician, neither characterization is likely accurate.

If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527(d)(2). The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory. *See Edwards*, 937 F.2d 580 (ALJ properly discounted treating physician's report where the physician was unsure of the accuracy of his findings and statements.)

Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. *See Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986); *see also Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987). When a treating physician's opinion does not warrant *controlling* weight, the ALJ must nevertheless weigh the medical opinion based on the 1) length of the treatment relationship and the frequency of examination; 2) the nature and extent of the treatment relationship; 3) the medical evidence supporting the opinion; 4) consistency with the record as a whole; 5) specialization in the medical issues at issue; 6) other factors which tend to support or contradict the opinion. 20 C.F.R. § 404.1527(d). However, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion. *See Wilson v. Heckler*, 734 F.2d 513, 518 (11th Cir. 1984); *see also* 20 C.F.R. § 404.1527(d)(2).

Here, the ALJ found that Plaintiff had the RFC to stand, walk and sit six hours in an eight hour workday and to lift 20 pounds, with occasional postural limitations in balancing, stooping and crouching and with the additional limitation of the need to avoid temperature extremes (R. 15).

Plaintiff contends that this finding is inconsistent with the opinion of Dr. Appley, and that the ALJ "did not adequately consider" this opinion

As noted above *and* as noted by the ALJ, Dr. Appley opined that Plaintiff's ability to sit, stand, or walk for *extended* periods of time without interruption was limited (emphasis added). Dr. Appley opined that Plaintiff "functions fairly well as long as he has unlimited ability to move around." His lifting should be frequently up to ten pounds and occasionally up to twenty pounds. It was also noted that Plaintiff could use his hands for repetitive action, simply grasping, pushing and pulling with fine manipulation, but could not use his feet for repetitive movements (R. 13). Plaintiff does not explain how the RFC finding is inconsistent with the above, and the Court sees no inconsistency.

Dr. Appley noted Plaintiff's neck pain to be due to mild degenerative disease, and noted no new motor, sensory or reflex deficits. Moreover, the ALJ noted the RFC assessments of state agency physicians, which also support the ALJ's finding. The RFC finding is therefore adequately supported by substantial evidence and was made in accordance with law.[3]

**Pain**

Pain is a non-exertional impairment. *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. 20 C.F.R. § 404.1528. In determining whether the medical signs and

---

[3]Although not raised by Plaintiff, the Court notes that the finding that Plaintiff could return to his prior work as he performed it, is consistent with this RFC, and is theretofore also adequately supported. Plaintiff testified that his technical support job was telephonic, in nature, and that his employer accommodated him by buying a remote headset so that he could stand, walk around or sit, at will (R. 306).

-13-

laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the Eleventh Circuit's three-part "pain standard":

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

*Foote*, 67 F.3d at 1560, *quoting Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991).  Pain alone can be disabling, even when its existence is unsupported by objective evidence, *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992), although an individual's statement as to pain is not, by itself, conclusive of disability.  42 U.S.C. § 423(d)(5)(A).

**Credibility**

Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. *Jones v. Department of Health and Human Services*, 941 F.2d 1529, 1532 (11th Cir. 1991) (articulated reasons must be based on substantial evidence).  A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record.  As a matter of law, the failure to articulate the reasons for discrediting subjective pain testimony requires that the testimony be accepted as true.  *Foote*, 67 F.3d at 1561-62; *Cannon v. Bowen*, 858 F.2d 1541, 1545 (11th Cir. 1988).

Here, Plaintiff contends that the ALJ did not properly evaluate Plaintiff's allegations of pain. To the contrary, the ALJ found that Plaintiff's degenerative disc disease of the lumbar spine status post surgery and left L4-5 facet syndrome were severe impairments (R. 16), but found that the clinical findings did not appear to produce pain or limitations of incapacitating proportions (R. 15).  As

support for this finding, the ALJ noted Plaintiff's "fully functional type lifestyle." *Id.* Plaintiff was able to take care of his personal needs, prepare meals, go shopping, do small home repairs, work on the computer and manage finances. *Id.* The ALJ also noted Plaintiff's ability to visit with family and friends, and to drive. There is also evidence that Plaintiff was attending college courses during the relevant time period. These examples are well supported by the record, and are consistent with the conclusion of Plaintiff's treating physician, Dr. Appley, that Plaintiff could function "fairly well" given unlimited ability to move around.

This is not to say that the record does not also include evidence that Plaintiff was, indeed, in pain during the relevant time period. While Plaintiff points to other evidence in the record (the MRI's and Plaintiff's continuing complaints of pain), it is not the task of the Court to reweigh the evidence. As stated above, the standard on review is whether the ALJ's decision is supported by substantial record evidence. Here, there is evidence that *after* the date last insured, Plaintiff's condition worsened considerably, due to another motor vehicle accident. As of the date last insured, however, the determination of the ALJ with respect to Plaintiff's credibility and his allegations of pain are supported by substantial evidence and must therefore be affirmed.

## CONCLUSION

The decision of the Commissioner is **AFFIRMED.** The Clerk is directed to enter judgment accordingly, terminate all pending matters and close this case.

**DONE** and **ORDERED** in Orlando, Florida on February 8, 2007.

*David A. Baker*

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record